**LANE & NACH, P.C.**
2001 E. Campbell Ave., Suite 103
Phoenix, AZ 85016
Telephone No.: (602) 258-6000
Facsimile No.: (602) 258-6003

Adam B. Nach – 013622
Email: adam.nach@lane-nach.com
Paul M. Hilkert – 028934
Email: paul.hilkert@lane-nach.com

Attorneys for Trudy A. Nowak, Case Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MARTIN EDWARD HUSSAK,<br><br>Debtor. | (Chapter 7 Case)<br>Case No. 4:14-bk-09856-BMW<br><br>**AMENDED STIPULATED APPLICATION TO COMPROMISE CLAIM [F.R.B.P. 9019]** |

Trudy A. Nowak, Chapter 7 Trustee, and Alan Solot (Debtor's former attorney), (collectively "Parties") by and through their attorneys undersigned, herein file this amended application with this Court for an Order authorizing Trustee to compromise a claim of the Estate. In support of this Amended Stipulated Application, the Parties present the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

I. FACTUAL BACKGROUND

1. This case was commenced by a Voluntary Petition filed by Martin E. Hussak ("**Debtor**") under Chapter 13 of Title 11, United States Code, on June 26, 2014 ("**Petition Date**") and subsequently converted to Chapter 7 of Title 11, United States Code, on September 9, 2014 ("**Conversion Date**").

2. Trudy A. Nowak is the duly qualified and acting Chapter 7 trustee in this case ("**Trustee**").

3. Debtor had a prepetition cause of action for attorney malpractice against his former counsel, Alan Solot, arising from his representation of Debtor in a prior bankruptcy case and the present case.

4. In 2012, the Arizona Department of Transportation filed an eminent domain case in Pinal County Superior Court to take Debtor's property located in Picacho, Arizona. Debtor hired attorney

Lawrence Schubart to represent him in that case. Mr. Solot filed Chapter 13 bankruptcy on behalf of Mr. Hussak on January 21, 2013 (the "**Original Chapter 13**"). Mr. Hussak alleges that Mr. Solot failed to get Mr. Schubart appointed as special counsel in the bankruptcy case in order to handle the pending eminent domain case, despite months of requests by Schubart.

5. Mr. Hussak alleges that Mr. Solot failed to represent him in a reasonable and prudent manner and failed to communicate with him sufficient care and diligence in the Original Chapter 13 bankruptcy case ultimately was dismissed on March 19, 2014 as a result of the failure to get a Plan of Reorganization timely approved.

6. As a result of Mr. Solot's alleged failure to respond, alleged failure to get him approved as special counsel, alleged failure to communicate and alleged failure to protect the Debtor's interests, Mr. Schubart withdrew in the eminent domain case in April 2014. As a result of Solot's alleged malpractice, Debtor was left without counsel and was allegedly unable to defend the eminent domain case and to protect the potential recovery sought therein.

7. The current bankruptcy case was filed as a Chapter 13 on June 26, 2014. Mr. Hussak claims that Mr. Solot's alleged negligence ultimately led to the State prevailing on an unopposed summary judgment on July 17, 2014, depriving him of further compensation sought in the Pinal County eminent domain case. Mr. Hussak was in prison at the time.

8. Alan Solot was disciplined by the State Bar of Arizona by Order dated October 15, 2015 (the "**Order**"), as a result of a complaint filed by Mr. Hussak relating to the handling of his bankruptcy cases, including but not limited to the alleged loss of the eminent domain case. The Order details the facts set forth herein that correspond to the directly related malpractice claim.

9. Without participation or knowledge of the Trustee, Mr. Hussak hired counsel and made a demand to Mr. Solot on the claim for malpractice relating to the above-referenced conduct. The Trustee became aware of the claim and of a tentative settlement between Mr. Hussak and Mr. Solot when the parties requested that the Trustee acknowledge an alleged lack of interest in the claim on the part of the bankruptcy estate.

10. Trustee entered into a tolling agreement with Mr. Solot relating to the malpractice claim in order to investigate the ownership issue, and has determined that the claim is the asset of the Chapter 7 bankruptcy estate. The parties wish to settle the claim.

11. Hussak has filed a one paragraph Complaint *pro per* in Pima County Superior Court, Case No. C20163645, against Mr. Solot and "the Law Office of Alan Solot" alleging malpractice by Solot in 2013 in the bankruptcy matters and seeking unspecified damages. More recently, Hussak filed an Amended Complaint.

12. The United States of America has filed a Proof of Claim in the amount of $303,345.00, as a secured creditor based upon a Judgment for restitution in a criminal case CR 11-01754-001-TUC-CKJ, and the U.S. Customs & Border Protection has also filed a Proof of Claim in the amount of $303,745.00 as an unsecured creditor. *See* Proof of Claim Nos. 5 and 10.

II. AGREEMENT BETWEEN THE PARTIES

13. Trustee has received an offer to settle all of the estate's interest in the malpractice claim with Mr. Solot for a total of $25,000.00 ("Settlement Amount"), including but not limited to any claims which arose against Mr. Solot prior to the commencement of this case and any claims against Mr. Solot which arose from the Original Chapter 13 case, subject to bankruptcy court approval, which Settlement Amount is close to the same amount as the tentative settlement previously reached between Mr. Hussak and Mr. Solot.

14. Trustee believes the settlement is fair and is a prudent compromise, given the nature and amount of the claim, the potential defenses, the complexity and difficulty of proving damages and causation, the inability to pay a larger sum, and the posture involving Debtor's hostility and potential lack of cooperation.

15. The United States of America, through its counsel Denise Ann Faulk, Assistant United States Attorney, does not oppose the Motion.

16. Additionally, in order to resolve the United States of America's claim that its lien attaches to the proceeds from the settlement of the malpractice claim as set forth herein, the United State of America and the Trustee agree that the Settlement Amount, shall be distributed as follows:

a. First, payment in full of all administrative claims/expenses of the bankruptcy estate, including but not limited to Trustee's fees and costs and Trustee's attorneys' fees and costs;

b. Second, for payment of $3,500.00 to the allowed non-administrative unsecured creditor claims, excluding any unsecured claim of the United States of America[1]; and

c. Third, the remaining balance of the Settlement Amount shall be distributed to the United States of America.

III. LEGAL ARGUMENT

The requested relief is authorized by Rule 9019(a) of the Federal Rules of Bankruptcy Procedure which provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, the indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

The Trustee, in the exercise of her best business judgment and in consideration of the requirements of _A & C Properties_, 784 F.2d 1377 (9th Cir. 1986), _In re Woodson_, 839, F.2d 610 (9th Cir. 1988), and _In re Schmitt_, 215 B.R. 417 (9th Cir. BAP 1997), believes that the proposed compromise and settlement is an appropriate resolution of this matter.

Bankruptcy courts have broad discretion in approving compromise agreements. _In re Woodson_ 839 F.2d at 620. The Court may approve a compromise if it is fair and equitable. Id. In determining the fairness and adequacy of a proposed compromise agreement, the Court should consider the following four factors: (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in collection; (3) the complexity of the litigation involved as well as the expense, inconvenience and delay necessarily attendant to the litigation; and (4) the paramount interest of creditors and a proper deference to their reasonable views.

---

[1] In the event that allowable non-administrative unsecured creditor claims total less than $3,500.00, the non-administrative unsecured creditor claims shall be paid in full, with any funds remaining thereafter to be distributed to the United States of America.

Consideration of these factors does not require the Court to decide questions of law or fact raised in the controversies sought to be settled, or determine that the compromise presented is the best possible outcome. Rather, the Court need only canvass the issues to determine whether the settlement fails "below the lowest point in the zone of reasonableness". *Newman v. Stein*, 464 F.2d 689, 698 (2nd Cir. 1972). cert. denied. 409 U.S. 1039 (1972); see also *In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595, 598 (Bankr. E.D. Pa. 1992) (holding that a bankruptcy court must consider these factors to see whether the settlement falls below the lowest point in the range of reasonableness.) Accordingly, if the court finds the compromise does not fall below the threshold of reasonableness, the compromise should be approved. *In re Planned Protective Services, Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991).

The Trustee believes the proposed settlement is in the best interest of the creditors and parties-in-interest of this Estate. The settlement provides funds for the benefit of creditors of the Estate while avoiding the cost and uncertainty associated with litigation of this matter.

IV. <u>ANALYSIS OF MALPRACTICE CLAIM AS PROPERTY OF THE ESTATE</u>

The malpractice claim against Mr. Solot is a cause of action which is a prepetition asset of the Chapter 7 Estate. The only basis informally asserted by Debtor to dispute this conclusion is that the eminent domain case was finally terminated unsuccessfully on July 17, 2014, approximately three weeks after the second Chapter 13 was filed. Accordingly, Debtor apparently contends that the date when his damages became final make the claim a post-petition asset. That is directly contrary to bankruptcy law.

Section 541 of the Bankruptcy Code defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). *In re Folks*, 211 B.R. 378, 384 (9th Cir. BAP 1997). The term "property of the estate" under § 541 is very broad. That includes claims or causes of action in litigation, including tort claims. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir.1986), citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 & n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *Goldstein v. Stahl (In re Goldstein)*, 526 B.R. 13 (9th Cir. BAP 2015). It also generally includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate" (§ 541(a)(6)) and "[a]ny interest in property that the estate acquires after the commencement of the case" (§ 541(a)(7)). The breadth of the concept of property of the estate in the Bankruptcy Code reflects the intention of Congress "to include all legally cognizable interests although

they may be contingent and not subject to possession until some future time." *Rau v. Ryerson* (*In re Ryerson*), 739 F.2d 1423, 1425 (9th Cir.1984), citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), reprinted in 1978 U.S.Code Cong. & Ad. News 5963, 6136.

If the cause of action accrued prior to a debtor's petition date, it is an asset that must be scheduled. *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir.2001) *Cusano*, 264 F.3d at 947. Unscheduled claims pass to the trustee and are not abandoned, *Welsh v. Quabbin Timber, Inc.*, 199 B.R. 224, 229 (D.Mass.1996), even though the estate is closed or the plan is confirmed. *Dixon v. First Family Financial Services*, 276 B.R. 173, 181 (S.D.Miss.2002), abrogated on other grounds, *Reed v. Mississippi Farm Bureau Mut. Ins. Co.*, 299 B.R. 804 (S.D.Miss.2003)("It is axiomatic that, without disclosure of property, it can be neither abandoned nor administered."); see also, *Tilley v. Anixter Inc.*, 332 B.R. 501, 508 (D.Conn.2005)(closure of an estate does not result in abandonment of unscheduled claim); *An–Tze Cheng v. K&S Diversified Investments, Inc.*, 308 B.R. 448, 459–60 (9th Cir. BAP 2004) (trustee may reopen case to administer omitted asset); 11 U.S.C. § 554. Abandonment cannot occur without notice to creditors and a hearing. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 709 (9th Cir.1986).

The Debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets. The Bankruptcy Code and Rules "impose upon the bankruptcy debtor an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." [*In re Coastal Plains*, 179 F.3d 197, 207–208 (5th Cir.1999) ], [*Hay v. First Interstate Bank of Kalispell*, N.A., 978 F.2d 555, 557 (9th Cir.1992) ]; 11 U.S.C. § 521(1). The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding. *In re Coastal Plains*, 179 F.3d at 208.

Moreover, the accrued cause of action is property of the estate even if the debtors were unaware of the claim when they filed for bankruptcy protection. See *Miller v. Pacific Shore Funding*, 287 B.R. 47, 50 (D.Md.2002) ("Even a cause of action that the debtor, when filing the petition, did not know the law granted belongs to the estate.... Property of the debtor does not escape the bankruptcy estate merely because the debtor is unaware of its existence.") A later recovery on the claim is derivative of the cause of action and therefore also property of the state. *In re Smith*, 293 B.R. 786, 788 (Bankr.D.Kan.2003); *In re Ballard*, 238 B.R. 610, 624 (Bankr.M.D.La.1999).

In determining whether assets are "prepetition" assets that are owned by the estate or "post-petition" assets that should be recognized as the debtor's, free of estate claims, the touchstone is the Supreme Court's Bankruptcy Act decision in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). In *Segal*, the Supreme Court confronted the question of who owned a loss carryback tax refund claim arising from losses generated during the year of the bankruptcy filing, the estate or the debtors. *Id.* at 376, 86 S.Ct. 511. Ultimately, the Supreme Court determined that the refund claim was estate property based on its conclusions that the claim was "sufficiently rooted in the pre-bankruptcy past and [was] little entangled with the bankrupts' ability to make an unencumbered fresh start." *Id.* at 380, 86 S.Ct. 511. The 1978 Bankruptcy Code "followed Segal to the extent that it includes after acquired property 'sufficiently rooted in the pre-bankruptcy past' but eliminates the requirement that it not be entangled in the debtor's ability to make a fresh start." *In re Richards*, 249 B.R. 859, 861 (Bankr.E.D.Mich.2000), citing S.Rep. No. 95–989, 95th Cong., 2d Sess. 82, 1978, reprinted in 1978 U.S.C.C.A.N. 5787, 5868; In re Ryerson, 739 F.2d at 1425; and *Johnson v. Taxel (In re Johnson)*, 178 B.R. 216, 218 (9th Cir. BAP 1995). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." Azbill v. Kendrick (In re Azbill), 385 B.R. 799 (table), 2008 WL 647407, at *7 (6th Cir. BAP 2008) (quoting In re Yonikus, 996 F.2d 866, 869 (7th Cir.1993)).

Pre-petition conduct or facts alone will not "root" a claim in the past; there must be a pre-petition violation. *Tyler v. DH Capital Mgmt. Inc.*, 736 F.3d 455, 462 (6th Cir.2013 ) All causes of action that hypothetically could have been brought pre-petition are property of the estate. *Id.* See also, *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n. 5 (3d Cir.2002). This is the case "even if the debtor[ ] w[as] unaware of the claim." *In re Michael*, 423 B.R. 323, 330 (Bankr.D.Idaho 2009); see also *Blakely v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1276 n. 7 (11th Cir.2000).

Further, the entire cause of action is property of the estate, even if further post-petition damages were incurred. See *Wischan v. Adler (In re Wischan)*, 77 F.3d 875, 878 (5th Cir.1996) (declining to apportion pain-and-suffering losses from pre-petition personal injury claims into pre- and post-petition amounts); *Jenkins v. A.T. Massey Coal Co. (In re Jenkins)*, 410 B.R. 182, 192 (Bankr.W.D.Va.2008) (holding tort of outrage claim to be property of the estate, even where distress did not rise to an actionable level until post-petition); *In re Ballard*, 238 B.R. 610, 624 (Bankr.M.D.La.1999) ("The cause of action for

Lane & Nach, P.C.
2001 E. Campbell Ave., #103
Phoenix, AZ 85016

7

lost post-petition wages is itself a pre-petition interest in property.")

The relevant bankruptcy-law question is when is the claim minimally actionable, not whether the claim is fully mature. *Tyler v. DH Capital Mgmt. Inc.*, 736 F.3d at 464. Some courts have applied the test expansively, including contingent and unripe claims as property of the estate. See, e.g., *Mueller*, 2007 WL 1376081, at *8 (holding that legal-malpractice claim became part of estate at time of negligence, not when damages are incurred). It is critical to distinguish between accrual of a cause of action for purposes of determining ownership in a bankruptcy proceeding and accrual for purposes of the statute of limitations. *Cusano*, 264 F.3d at 947, citing, *In re Swift*, 129 F.3d 792, 796, 798 (5th Cir.1997).

There can be no question that Debtor's malpractice claim accrued sufficient to make it a prepetition asset of the bankruptcy estate. The alleged violations by Mr. Solot occurred over a period of more than a year and half, prior to the second Chapter 13 petition filed on June 26, 2014. By that time, Debtor had suffered substantial injury as a result of the alleged malpractice, even though the order granting summary judgment dismissing the eminent domain case had not yet been entered. As a result of the malpractice, Debtor's Chapter 13 case had been dismissed, his counsel was prevented from obtaining relief in the condemnation litigation and had to withdraw, and summary judgment had been filed without a response. Debtor had suffered sufficient harm as of the date of the petition that he could have brought an action against Solot. Most importantly, the malpractice claim is based upon actions of Mr. Solot that are firmly rooted in the pre-bankruptcy past. Accordingly, the entire claim is an asset of the estate.

It is essential that Trustee be given permission to execute a binding release and a dismissal with prejudice of all potential claims by Debtor against his former counsel, Alan Solot. The Court should find that the claims are an asset of the bankruptcy estate and the Trustee has the sole and exclusive authority to investigate, settle and prosecute such claims.

WHEREFORE, the Parties pray for an Order of this Court as follows:

a. Authorizing Trustee to accept the sum of $25,000.00, pursuant to the terms set forth herein, in order to settle all of the Estate's interest in any malpractice claim against Alan Solot relating to his representation of Debtor in both the Original Chapter 13 and the present bankruptcy case;

b. Authorizing Trustee to pay from the Settlement Amount all approved administrative claims/expenses of the bankruptcy estate, including but not limited to Trustee fee and Trustee's attorneys'

fees and costs, followed by payment of $3,500.00 to the non-administrative unsecured creditor claims, excluding any unsecured claim of the United States of America [2], with any funds remaining thereafter to be distributed to the United States of America on its secured claim;

   c. Authorizing Trustee to execute a release of the Estate's interest in any and all claims or potential claims against Alan Solot relating to his representation of Debtor in both the Original Chapter 13 case and the present bankruptcy case and to stipulate to dismissal with prejudice of any pending malpractice action; and

   d. For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this  18th  day of January, 2018.

**LANE & NACH, P.C.**

By /s/ Adam B. Nach – 013622
  Paul M. Hilkert
  Adam B. Nach
  Attorneys for Trustee

**UDALL LAW FIRM, LLP**

By /s/ Janet Linton - 24818
  Janet Linton
  Attorney for Alan Solot

Copy of the foregoing delivered
Via 1st Class Mail to the following on the
 18th  day of January, 2018

Martin Edward Hussak
10313 S. Epperson Lane
Tucson, AZ  85756
*Debtor*

Denise Ann Faulk
Assistant United States Attorney
United States Attorney's Office
405 West Congress, Suite 4800
Tucson, AZ 85701-5040

---

[2] In the event that allowable non-administrative unsecured creditor claims total less than $3,500.00, the non-administrative unsecured creditor claims shall be paid in full, with any funds remaining thereafter to be distributed to the United States of America.

| | |
|---|---|
| 1 | Copy of the foregoing delivered<br>via electronic notification to the following |
| 2 | on the  18th  day of January, 2018: |
| 3 | Janet Linton<br>Udall Law Firm, LLP |
| 4 | 2 4801 E. Broadway Blvd., Suite 400<br>Tucson, Arizona 85711-3638 |
| 5 | linton@udalllaw.com |
| 6 | Alan R. Solot<br>2701 E. Speedway, Suite 203 |
| 7 | Tucson, AZ 85716<br>Email: arsolot@gmail.com |
| 8 | |
| 9 | Office of U.S. Trustee<br>230 North First Avenue<br>Phoenix, AZ 85003 |
| 10 | Email:  Jennifer.A.Giaimo@usdoj.gov<br>Email: ustpregion14.px.ecf@usdoj.gov |
| 11 | |
| 12 | By /s/ Debbie McKernan |